**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

EQUAL EMPLOYMENT OPPORTUNITY    :
COMMISSION,    :
    :
        **Plaintiff,**    :
    :
      **-against**    :     **COMPLAINT**
    :     **AND JURY**
SPS TEMPORARIES, INC.;    :     **TRIAL DEMAND**
PROFESSIONAL PERSONNEL    :
MANAGEMENT CORPORATION;    :
JAMESTOWN CONTAINER COMPANIES;    :    **04   CV   0052** E(sc)
and WHITING DOOR MANUFACTURING    :
CORP.    :
    :
        **Defendants.**    :
-----------------------------------------------------------x

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, Title I of the Civil

Rights Act of 1991, the Americans with Disabilities Act and the Age Discrimination in

Employment Act to correct unlawful discrimination on the basis of race, sex, national origin,

disability and age and to make whole James Sciandra, Michelle Alberts, Tammi Iser and the class

of individuals who applied for temporary employment with Defendants SPS Temporaries,

Inc./Professional Personnel Management Corp. ("SPS/PPMC") and who were affected by

Defendants' discriminatory practices.

Defendants SPS/PPMC failed to refer individuals for temporary employment based on

their race, sex, national origin, disability, pregnancy and age.  SPS/PPMC complied with

discriminatory requests for temporary employees based on race and sex made by its clients,

including Defendants Jamestown Container Companies ("Jamestown") and Whiting Door

Manufacturing Corp. ("Whiting Door").

SPS/PPMC required all applicants for temporary employment to complete a pre-employment medical questionnaire that elicited information regarding potential disabilities. SPS/PPMC denied employment to James Sciandra because they regarded him as disabled due to the information he provided on the SPS/PPMC pre-employment medical questionnaire. SPS/PPMC discriminated against a class of qualified individuals with disabilities by failing to refer them for temporary employment for reasons including, but not limited to, their answers on the pre-employment medical questionnaire.

SPS/PPMC terminated permanent employee Tammi Iser due to her pregnancy. SPS/PPMC retaliated against permanent employee Michelle Alberts by taking adverse action against her, and ultimately terminating her, after she questioned SPS/PPMC's discriminatory practices. Finally, SPS/PPMC destroyed and altered documentary evidence during EEOC's investigation into the above described charges. These allegations are described in greater detail below.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C.§§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. ("Title VII"); Title I, Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981A; Section 107(a) of the Americans with Disabilities Act of 1990, 42 U.S.C. §12117(a) ("ADA"); and Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(b) (the "ADEA"),

which incorporates by reference of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§216(c) and 217.

2.  The unlawful employment practices alleged below were and are now being committed within the jurisdiction of the United States District Court for the Western District of New York.

## PARTIES

3.  Plaintiff, Equal Employment Opportunity Commission ("the Commission"), is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, Title I of the ADA, and the ADEA, and is expressly authorized to bring this section by Section 706(f)(1), 42 U.S.C. §2000e-5(f)(1), 42 U.S.C. §12117(a), which incorporates by reference 42 U.S.C. §2000e-5(f)(1), and 29 U.S.C. §626(b), as amended by Section 2 of the Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and by Public Law 98-532 (1984), 98 Stat. 2705.

4.  At all relevant times, Defendant SPS Temporaries, Inc. has continuously been a Corporation under the laws of New York, is now doing business in New York and has continuously had at least twenty employees.

5.  At all relevant times, Defendant Professional Personnel Management Corp. has continuously been a Corporation under the laws of New York, is now doing business in New York and has continuously had at least twenty employees.

6.  At all relevant times, Defendant Jamestown Container Companies has continuously been a Corporation under the laws of New York, is now doing business in New York and has

continuously had at least fifteen employees.

7. At all relevant times, Defendant Whiting Door Manufacturing Corp. has continuously been a Corporation under the laws of New York, is now doing business in New York and has continuously had at least fifteen employees.

8. At all relevant times, Defendant SPS Temporaries, Inc. has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §2000e-(b), (g), and (h), Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h), and Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h).

9. At all relevant times, Defendant Professional Personnel Management Corp. has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §2000e-(b), (g), and (h), Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h), and Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h).

10. At all relevant times, Defendant Jamestown Container Companies has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §2000e-(b), (g), and (h).

11. At all relevant times, Defendant Whiting Door Manufacturing Corp. has continuously been an employer engaged in an industry affecting commerce within the meaning of Section

701(b), (g), and (h) of Title VII, 42 U.S.C. §2000e-(b), (g), and (h).

12. At all relevant times, Defendants SPS Temporaries, Inc. and Professional Personnel Management Corp. have procured employees for employers and have been an employment agency within the meaning of Section 701(c) of Title VII, 42 U.S.C. § 2000e(c), Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Section 701(c) of Title VII, 42 U.S.C. § 2000e(c) and Section 11(c) of the ADEA, 29 U.S.C. § 630(c).

## STATEMENT OF CLAIMS AGAINST SPS/PPMC UNDER TITLE VII

13. More than thirty days prior to the institution of this lawsuit, EEOC Commissioner Paul Miller issued a charge of discrimination against Defendants SPS/PPMC alleging violations of Title VII. Furthermore, more than thirty days prior to the institution of this lawsuit, Tammi Iser filed a charge of discrimination against SPS/PPMC alleging violations of Title VII. All other conditions precedent to the institution of this lawsuit have been fulfilled.

14. Since at least May 3, 2000, Defendants SPS/PPMC have engaged in a pattern or practice of unlawful employment practices, including those outlined below, in violation of Title VII, 42 U.S.C. §2000e-2:

   a.   Defendants SPS/PPMC have discriminated against individuals on the basis of race, sex and national origin by failing to refer applicants for temporary employment, and by complying with discriminatory requests for temporary employees based on race and sex made by their clients;

   b.   Defendants SPS /PPMC discriminated against Tammi Iser on the basis of sex by

terminating her due to her pregnancy.

15.  The effect of the practices complained of in ¶14 has been to deprive Tammi Iser and other individuals of equal employment opportunities and otherwise adversely affect their status as employees on the basis of race, sex and national origin

16.  The unlawful employment practices complained of in ¶14 were and are intentional.

17.  The unlawful employment practices complained of in ¶14 were and are done with malice or with reckless indifference to the federally protected rights of Tammi Iser, racial minorities, women, and ethnic minorities.

## STATEMENT OF CLAIMS AGAINST SPS/PPMC UNDER THE ADA

18. More than thirty days prior to the institution of this lawsuit, James Sciandra and Michelle Alberts filed charges of discrimination against SPS/PPMC alleging violations of Title I of the ADA.  All other conditions precedent to the institution of this lawsuit have been fulfilled.

19. Since at least May 3, 2000, Defendants SPS/PPMC have engaged in a pattern or practice of unlawful employment practices, including those outlined below, in violation of Title I of the ADA, 42 U.S.C. §12112(a), (b)(1)(2)(3)(5) and (b)(6):

    a.      Defendants SPS/PPMC required applicants for temporary employment to complete a pre-employment medical questionnaire designed to elicit information about medical problems and potential disabilities;

    b.      Defendants SPS/PPMC denied employment to a class of qualified individuals with disabilities, as defined under the ADA, by failing to refer them for temporary

employment for reasons including, but not limited to, their responses to

SPS/PPMC's pre-employment medical questionnaire;

c.    Defendants SPS/PPMC discriminated against James Sciandra by regarding him as

disabled and failing to hire him on that basis;

d.    Defendants SPS/PPMC retaliated against Michelle Alberts by taking adverse

action against her and terminating her after she questioned SPS/PPMC's

discriminatory practices under the ADA.

20.  The effect of the practices complained of in ¶19 has been to deprive James Sciandra,

Michelle Alberts and other individuals of equal employment opportunities and otherwise

adversely affect their status as employees on the basis of their disabilities and, regarding Ms.

Alberts, her opposition to SPS/PPMC's discriminatory practices.

21.  The unlawful employment practices complained of in ¶19 were and are intentional.

22.  The unlawful employment practices complained of in ¶19 were and are done with

malice or with reckless indifference to the federally protected rights of James Sciandra, Michelle

Alberts and other similarly situated individuals protected under the ADA.


## STATEMENT OF CLAIMS AGAINST SPS/PPMC UNDER THE ADEA

23.   More than thirty days prior to the institution of this lawsuit, the EEOC issued a

directed charge against SPS/PPMC alleging violations of the ADEA.

24. Prior to institution of this lawsuit, the Commission's representatives attempted to

eliminate the unlawful employment practices alleged below and to effect voluntary compliance

with the ADEA through informal methods of conciliation, conference and persuasion within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

25.  Since at least May 3, 2000, Defendants SPS/PPMC have engaged in a pattern or practice of unlawful employment practices in violation of the ADEA, 29 U.S.C. §623 by failing to refer applicants over the age of 40 for temporary employment.

26.  The effect of the practices complained of in ¶25 has been to deprive individuals of equal employment opportunities and otherwise adversely affect their status as employees on the basis of age.

27. The unlawful employment practices complained of in ¶25 were willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).


## RECORD VIOLATIONS BY SPS/PPMC UNDER TITLE VII, ADA AND ADEA

28.      Since at least May 3, 2000, Defendants SPS/PPMC have violated Section 709 of Title VII, 42 U.S.C. §2000e-8, Section 7(a) of the ADEA, 29 U.S.C. §626(a), and Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c), by failing to make and preserve records relevant to the determination of whether unlawful employment practices have been or are being committed.

29. Since at least May 3, 2000, Defendants SPS/PPMC violated Section 709 of Title VII, 42 U.S.C. §2000e-8, Section 7(a) of the ADEA, 29 U.S.C. §626(a), Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c), and the Uniform Guidelines on Employment Selection Procedures, 29 C.F.R.

§1607, by unlawfully coding and referring applicants based on race, sex and national origin.

## STATEMENT OF CLAIMS AGAINST JAMESTOWN UNDER TITLE VII

30. More than thirty days prior to the institution of this lawsuit, EEOC Commissioner Paul Miller issued a charge of discrimination against Defendant Jamestown alleging violations of Title VII. All other conditions precedent to the institution of this lawsuit have been fulfilled.

31. Since at least May 14, 2001, Defendant Jamestown Container Companies has engaged in a pattern or practice of unlawful employment practices, including those outlined below, in violation of Title VII, 42 U.S.C. §2000e-2, by failing to hire Black and female temporary employees from SPS/PPMC and making requests to SPS/PPMC for White, male temporary employees.

32. The effect of the practices complained of in ¶31 has been to deprive individuals of equal employment opportunities and otherwise adversely affect their status as employees on the basis of race and sex.

33. The unlawful employment practices complained of in ¶31 were and are intentional.

34. The unlawful employment practices complained of in ¶31 were and are done with malice or with reckless indifference to the federally protected rights of racial minorities and women.

## STATEMENT OF CLAIMS AGAINST WHITING DOOR UNDER TITLE VII

35. More than thirty days prior to the institution of this lawsuit, EEOC Commissioner

Paul Miller issued a charge of discrimination against Defendant Whiting Door alleging violations of Title VII. All other conditions precedent to the institution of this lawsuit have been fulfilled.

36. Since at least May 14, 2001, Defendant Whiting Door Manufacturing Corp. has engaged in a pattern or practice of unlawful employment practices in violation of Title VII, 42 U.S.C. §2000e-2, by failing to hire female temporary employees from SPS/PPMC and making requests to SPS/PPMC for male employees.

37. The effect of the practices complained of in ¶36 has been to deprive individuals of equal employment opportunities and otherwise adversely affect their status as employees on the basis of sex.

38. The unlawful employment practices complained of in ¶36 were and are intentional.

39. The unlawful employment practices complained of in ¶36 were and are done with malice or with reckless indifference to the federally protected rights of women.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining SPS/PPMC, their officers, successors, assigns and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of race, sex, age, national origin and/or disability.

B. Order SPS/PPMC to instate, reinstate, or otherwise make whole any individual denied employment opportunities based on race, sex, age, national origin and/or disability.

C. Order SPS/PPMC to institute and carry out policies, practices and programs which provide equal employment opportunities for racial minorities, women, employees age forty and

older, ethnic minorities and disabled individuals in all positions, and which eradicate the effects of its past and present unlawful employment practices.

     D. Order SPS/PPMC to make whole all persons who have been unlawfully denied employment or a job assignment because of race, sex, national origin and/or disability by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including appropriate back pay with prejudgment interest and job search expenses, in amounts to be determined at trial.

     E. Order SPS/PPMC  to make whole all persons who have been unlawfully denied employment or a job assignment based on race, sex, national origin and/or disability by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practiced described above, including but not limited to emotional pain, suffering and inconvenience in amounts to be determined at trial.

     F. Grant a judgment requiring Defendants SPS/PPMC to pay appropriate back wages in an amount to be determined at trial, an equal sum as liquidated damages, and prejudgment interest to individuals whose wages are being unlawfully withheld as a result of the acts complained above, including, but not limited to, individuals aged 40 and older that were not referred for employment by Defendants SPS/PPMC based on their age.

     G. Order SPS/PPMC to make and preserve all records, in accordance with the provisions of Section 709 of Title VII, 42 U.S.C. §2000e-8, section 7(a) of the ADEA, 29 U.S.C. §626(a), Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c), and the Uniform Guidelines on Employment Selection Procedures, 29 C.F.R. §1607, relevant to the determination of whether unlawful

employment practices have been or are being committed.

H.  Order SPS/PPMC to pay all persons who have been lawfully denied employment or a job assignment based on race, sex, age, national origin and/or disability punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

I.  Grant a permanent injunction enjoining Jamestown, their officers, successors, assigns and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of race and sex.

J.  Order Jamestown to instate, reinstate, or otherwise make whole any individual denied employment opportunities based on race and sex.

K.  Order Jamestown to institute and carry out policies, practices and programs which provide equal employment opportunities for racial minorities and women in all positions, and which eradicate the effects of its past and present unlawful employment practices.

L.  Order Jamestown to make whole all persons who have been unlawfully denied employment or a job assignment because of race and sex by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including appropriate back pay with prejudgment interest and job search expenses, in amounts to be determined at trial.

M.  Order Jamestown to make whole all persons who have been unlawfully denied employment or a job assignment based on race and sex by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practiced described above, including but not limited to emotional pain, suffering and inconvenience in amounts to be determined at trial.

N. Order Jamestown to pay all persons who have been lawfully denied employment or a job assignment based on race and sex punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

O. Grant a permanent injunction enjoining Whiting Door, their officers, successors, assigns and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of race and sex.

P. Order Whiting Door to instate, reinstate, or otherwise make whole any individual denied employment opportunities based on race and sex.

Q. Order Whiting Door to institute and carry out policies, practices and programs which provide equal employment opportunities for racial minorities and women in all positions, and which eradicate the effects of its past and present unlawful employment practices.

R. Order Whiting Door to make whole all persons who have been unlawfully denied employment or a job assignment because of race and sex by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including appropriate back pay with prejudgment interest and job search expenses, in amounts to be determined at trial.

S. Order Whiting Door to make whole all persons who have been unlawfully denied employment or a job assignment based on race and sex by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practiced described above, including but not limited to emotional pain, suffering and inconvenience in amounts to be determined at trial.

T. Order Whiting Door to pay all persons who have been lawfully denied employment or

13

a job assignment based on race and sex punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

U.  Grant such further relief as the Court deems necessary and proper in the public interest.

V.  Award the Commission its costs in this action.


**JURY TRIAL DEMANDED**

The Commission requests a jury trial on all questions of fact raised by its complaint.

14

Dated: January 27, 2004
New York, New York

Respectfully submitted,

Eric S. Dreiband
General Counsel

James Lee
Deputy General Counsel

Gwendolyn Reams
Associate General Counsel

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

1801 "L" Street., N.W.
Washington D.C. 20507

Katherine Bissell
Regional Attorney

Lisa Sirkin
Supervisory Trial Attorney

Robert D. Rose
Trial Attorney

New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004
(212) 336-3620